**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RICHARD C. HVIZDAK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CITIZENS BANK OF PENNSYLVANIA; | ) |
| RBS CITIZENS, NA; RBS CITIZENS | ) |  Civil Action No. 14-cv-406 (MBC) |
| FINANCIAL GROUP, INC.; ROYAL BANK | ) |
| OF SCOTLAND PLC; SENIOR V.P. KAREN | ) |
| D. BUDNIAK; RICHARD J. BOUDREAU & | ) |
| ASSOCIATES, LLC; UNIVERSAL FIDELITY | ) |
| LP; and MERCANTILE ADJUSTMENT | ) |
| BUREAU, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS**
**CITIZENS BANK OF PENNSYLVANIA, RBS CITIZENS, N.A.,**
**RBS CITIZENS FINANCIAL GROUP, INC., THE ROYAL BANK OF SCOTLAND PLC,**
**AND KAREN D. BUDNIAK'S**
**MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ ii

ARGUMENT ............................................................................................. 1

I.      Plaintiff's Claims Are Barred Under The Forbearance Agreement ..................................... 1

II.     Plaintiff's Claims Are Time-Barred ............................................................... 3

III.    Plaintiff Lacks Standing As A Guarantor ......................................................... 6

IV.   Plaintiff Is Estopped by His Failure to Raise These Claims in Bankruptcy Court ............. 8

V.    Plaintiff Fails to State Any Cognizable Claim .................................................. 11

      A.     Plaintiff Fails to State a Claim Under RICO ........................................ 11

      B.     Plaintiff Fails to State Any Other Federal or State Claim .................... 14

VI.   The Court Lacks Personal Jurisdiction Over RBS plc ........................................ 15

VII.  Plaintiff Should Not Be Allowed to Amend His Complaint .................................. 15

CONCLUSION ........................................................................................ 15

CERTIFICATE OF SERVICE ..................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Berg v. Obama*,
   586 F.3d 234 (3d Cir. 2009)...................................................................................7

*BPP Illinois, LLC v. Royal Bank of Scotland Group, PLC*,
   No. 13 Civ. 0638, 2013 WL 6003701 (S.D.N.Y. Nov. 13, 2013), *appeal docketed* No.
   13-4459 (2d Cir.) ............................................................................... *passim*

*Brittingham v. Mobil Corp.*,
   943 F.2d 297 (3d Cir. 1991).................................................................................13

*Bromwell v. Michigan Mutual Insurance Co.*,
   115 F.3d 208 (3d Cir. 1997)...................................................................................6

*Ciccarelli v. Gichner Systems Group, Inc.*,
   862 F. Supp. 1293 (M.D. Pa. 1994) ........................................................................4

*Cricket Communications, Inc. v. Trillium Industries, Inc.*,
   235 S.W.3d 298 (Tex. App. 2007)........................................................................11

*Delahanty v. First Pennsylvania Bank, N.A.*,
   464 A.2d 1243 (Pa. Super. Ct. 1983)......................................................................6

*Dongelewicz v. First Eastern Bank*,
   80 F. Supp. 2d 339 (M.D. Pa. 1999), *aff'd sub nom. Dongelewics v. PNC Bank*
   *National Association*, 104 F. App'x 811 (3d Cir. 2004)............................................3

*Ethypharm S.A. France v. Abbott Laboratories*,
   707 F.3d 223 (3d Cir. 2013)...................................................................................7

*Fleck v. KDI Sylvan Pools, Inc.*,
   981 F.2d 107 (3d Cir. 1992).................................................................................11

*Freidus v. ING Groep N.V.*,
   736 F. Supp. 2d 816 (S.D.N.Y. 2010)......................................................................6

*Gleason v. Borough of Moosic*,
   15 A.3d 479 (Pa. 2011) .....................................................................................3, 4

*Hardee-Guerra v. Shire Pharmaceuticals*,
   737 F. Supp. 2d 318 (E.D. Pa. 2010) ......................................................................9

*Hill v. Ofalt*,
   85 A.3d 540 (Pa. Super. Ct. 2014)..........................................................................6

*In re Erie Forge & Steel, Inc.*,
   418 F.3d 270 (3d Cir. 2005)........................................................................................7

*In re Insurance Brokerage Antitrust Litigation*,
   MDL No. 1663, 2006 WL 2850607 (D.N.J. Oct. 3, 2006)......................................13

*In re Insurance Brokerage Antitrust Litigation*,
   618 F.3d 300 (3d Cir. 2010)....................................................................................13

*In re Jackson*,
   574 F. App'x 317 (5th Cir. 2014) ............................................................................11

*In re LIBOR-Based Financial Instruments Antitrust Litigation*,
   MDL No. 11-2262, 2011 WL 5007957 (S.D.N.Y. Oct. 18, 2011)............................8

*In re LIBOR-Based Financial Instruments Antitrust Litigation*,
   935 F. Supp. 2d 666 (S.D.N.Y. 2013)...............................................................3, 4, 5

*In re LIBOR-Based Financial Instruments Antitrust Litigation*,
   No. 11 MD 2262, 2014 WL 2815645 (S.D.N.Y. June 23, 2014) ..............................5

*In re Richardson*,
   497 B.R. 546 (Bankr. S.D. Ind. 2013) ....................................................................11

*Kaiser v. Stewart*,
   965 F. Supp. 684 (E.D. Pa. 1997) ...........................................................................12

*Kanter v. Barella*,
   489 F.3d 170 (3d Cir. 2007)......................................................................................1

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*,
   337 F.3d 314 (3d Cir. 2003)..........................................................................9, 10, 11

*Link v. Wabash Railroad Co.*,
   370 U.S. 626 (1962)..................................................................................................9

*Meisinger v. Prudential Insurance Companies of America*,
   Civ. A. No. 2:10-cv-5885, 2011 WL 2036508 (D.N.J. May 23, 2011)....................9

*Mid-State Fertilizer Co. v. Exchange Natonal Bank of Chicago*,
   877 F.2d 1333 (7th Cir. 1989) .................................................................................7

*New Hampshire v. Maine*,
   532 U.S. 742 (2001)..................................................................................................8

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
   848 F.2d 414 (3d Cir. 1988)...............................................................................10, 11

*Ortlieb v. Hudson Bank*,
  312 F. Supp. 2d 705 (E.D. Pa. 2004), *aff'd*, 128 F. App'x 214 (3d Cir. 2005) ......................11

*Pennsylvania ex. rel Zimmerman v. PepsiCo, Inc.*,
  836 F.2d 173 (3d Cir. 1988).....................................................................................................14

*Prudential Insurance Co. of America v. U.S. Gypsum Co.*,
  359 F.3d 226 (3d Cir. 2004).................................................................................................3, 4

*Rawoof v. Texor Petroleum Co.*,
  521 F.3d 750 (7th Cir. 2008) .....................................................................................................7

*Regscan, Inc. v. Con-Way Transportation Services*,
  875 A.2d 332 (Pa. Super. Ct. 2005)..........................................................................................2

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*,
  81 F.3d 355 (3d Cir. 1996).......................................................................................................11

*Swift v. Pandey*,
  C.A. No. 13-650, 2013 WL 5486851 (D.N.J. July 1, 2013)....................................................14

*Triumph Packaging Group v. Ward*,
  877 F. Supp. 2d 629 (N.D. Ill. 2012) ......................................................................................12

*Vavro v. Albers*,
  No. 2:05-CV-321, 2006 WL 2547350 (W.D. Pa. Aug. 31, 2006), *aff'd sub nom.*
  *Vavro v. A.K. Steel Co.*, 254 F. App'x 134 (3d Cir. 2007) ......................................................12

*Walsh v. Quinn*,
  Civ. No. Civ. 09-167, 2009 WL 2207816 (W.D. Pa. July 23, 2009) (Cohill, J.), *aff'd*,
  359 F. App'x 273 (3d Cir. 2009) ...............................................................................................5

*Wheeler v. Travelers Insurance Co.*,
  22 F.3d 534 (3d Cir. 1994)..........................................................................................................7

*Yetter v. Wise Power Systems, Inc.*,
  929 F. Supp. 2d 329 (D. Del. 2013).....................................................................................9, 10

*Young v. West Coast Industrial Relations Association, Inc.*,
  763 F. Supp. 64 (D. Del. 1991), *aff'd*, 961 F.2d 1570 (3d Cir. 1992) ....................................14

*Z-Tel Communications v. SBC Communications*,
  331 F. Supp. 2d 513 (E.D. Tex. 2004).......................................................................................1

**DOCKETED CASES**

*In re Hvizdak*,
  No. 10-26949 (Bankr. W.D. Pa.) ..........................................................................................8, 10

**STATUTES**

18 U.S.C. § 1961(6) ................................................................................................13

18 U.S.C. § 1962(d) ...............................................................................................14

28 U.S.C. § 1447(c) .................................................................................................6

**OTHER AUTHORITIES**

FSA, Internal Audit Report (Mar. 2013), *available at*
www.fsa.gov.uk/static/pubs/other/ia-libor.pdf .......................................................5

Plaintiff's complaint should be dismissed in its entirety with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff's claims are barred by the release in the forbearance agreement, his claims are time-barred, he may not assert the legal rights of third parties, he is estopped from asserting his claims due to his failure to assert them in bankruptcy court, he fails to plead the elements of a claim under RICO, any other federal statute, or the common law, and this court does not have personal jurisdiction over The Royal Bank of Scotland plc.  Plaintiff's arguments in opposition are without merit.

## ARGUMENT

The relevant standards are discussed in Defendants' opening brief.  *See* Defs.' Br. 8-9.[1] Plaintiff is incorrect that "the particularity requirements of Rule 9 are limited by the requirement of Rule 8 for a short and plain statement of the claim."  Opp'n 3 (citing *Z-Tel Commc'ns v. SBC Commc'ns*, 331 F. Supp. 2d 513 (E.D. Tex. 2004)).  *Z-Tel* states only that "Rule 9 should be read together with Rule 8," not that Rule 9 is limited by Rule 8.  331 F. Supp. 2d at 558-59.  To the extent *Z-Tel* can be construed limiting the Rule 9 standard, it is contrary to the settled precedent of this circuit.  *See Kanter v. Barella*, 489 F.3d 170, 175 (3d Cir. 2007) (explaining that the "heightened standard" of pleading under Rule 9 was a "notable exception[]" to the comparatively lenient "notice pleading" Rule 8 standard).

## I.     Plaintiff's Claims Are Barred Under The Forbearance Agreement

Plaintiff's claims are entirely barred by the broad release included in the forbearance agreement.  *See* Defs.' Br. 9 (citing Hannen Decl. (ECF No. 47) Ex. 2, Am. Forbearance Agreement ¶ 4(a), (b)); *see also* Hannen Decl. Ex. 1, Orig. Forbearance Agreement ¶ 10(a), (b).

---

[1] For convenience, citations to the Memorandum in Support of Defendants Citizens Bank of Pennsylvania, RBS Citizens, N.A., RBS Citizens Financial Group, Inc., The Royal Bank of Scotland PLC, and Karen D. Budniak's Motion to Dismiss (ECF No. 48) are abbreviated "Defs.' Br. X" and citations to Plaintiff's Brief Opposing Motion to Dismiss (ECF No. 50) are abbreviated "Opp'n X."

Even construed strictly, as Plaintiff argues is required, the agreement unequivocally and unconditionally releases all of Plaintiff's claims against Defendants.  Accordingly, the amended complaint is subject to dismissal in its entirety on this ground.

Plaintiff argues that "[w]aivers and general words of release will not be construed so as to bar a claim which was not accrued at date [sic] release was given" and that his claims had not accrued at the time he signed the forbearance agreement because he was unaware of the facts underlying them.  Opp'n 5.  However, Plaintiff's claims accrued no later than May 29, 2008, when he was or should have been aware of the facts underlying his claims.  *See* Defs.' Br. 11-12; *infra* pp. 3-6; *see also BPP Illinois, LLC v. Royal Bank of Scotland Grp., PLC*, No. 13 Civ. 0638, 2013 WL 6003701, at *10-11 (S.D.N.Y. Nov. 13, 2013) (holding that under Pennsylvania law, plaintiffs were on inquiry notice of their fraud-based claims regarding potential LIBOR manipulation by May 29, 2008), *appeal docketed* No. 13-4459 (2d Cir.).  Because the forbearance agreement was not signed until November 30, 2010—two years and five months after May 29, 2008—Plaintiff's claims had accrued at the time the agreement was signed and were, therefore, released by the agreement.[2]

---

[2] Plaintiff's conclusory assertion that he was "bullied" into the agreement does not provide a defense to enforcement of the release.  *See* Defs.' Br. 9 n.6.  In addition there is no basis for Plaintiff's alternative argument that there was a unilateral mistake of fact of which the Defendants were aware or should have been aware.  Plaintiff alleges no facts to support this assertion, which is instead contradicted by the circumstances of the case.  To establish a basis for relief due to Defendants' knowledge of a unilateral mistake, Plaintiff would have to demonstrate that Defendants knew or had reason to know of the mistake (apparently, Plaintiff's ignorance of his claims at the time he signed the release).  *See Regscan, Inc. v. Con-Way Transp. Servs.*, 875 A.2d 332, 340-41 (Pa. Super. Ct. 2005) (discussing legal standard for unilateral mistake).  Here, the circumstances demonstrate the exact opposite, namely that Defendants had reason to believe that Plaintiff *knew* of his claims at the time he signed the release, because he was or should have been on notice of the claims no later than May 29, 2008, two years and five months earlier.  Accordingly, Plaintiff's argument based on a theory of unilateral mistake should be rejected.  *See id.* at 340 (dismissing claim for avoidance of contract based on mutual or unilateral mistake for failure to allege sufficient facts in support of claim).

## II.     Plaintiff's Claims Are Time-Barred

Plaintiff's LIBOR-related claims are governed by two- and four-year statutes of limitations and accrued no later than May 2008.  Because Plaintiff waited until February 2014 to file his complaint, all of his claims are time-barred and subject to dismissal.

Plaintiff's RICO and common law claims are governed by similar accrual rules, under which the limitations period runs as soon as "the plaintiff knows, or reasonably should know, that he or she has been injured and that the injury was caused by the conduct of another." *Dongelewicz v. First E. Bank*, 80 F. Supp. 2d 339, 345 (M.D. Pa. 1999) (discussing Pennsylvania rule), *aff'd sub nom. Dongelewics v. PNC Bank Nat'l Ass'n*, 104 F. App'x 811 (3d Cir. 2004); *see also Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*, 359 F.3d 226, 233 (3d Cir. 2004) (articulating same rule for civil RICO claims).[3]  These rules are unforgiving to plaintiffs.  Under both rules, the limitations period is triggered by mere "inquiry notice," *i.e.*, "actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause."  *Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011); *see also U.S. Gypsum Co.*, 359 F.3d at 233, 235 ("the injury discovery rule … allows the limitations period of civil RICO claims to accrue not only if [Plaintiff] actually knew of its injuries, but also if [Plaintiff] should have known of its injuries"; knowledge of "each element of a civil RICO claim" is not required).  "'Where reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its

---

[3] These Pennsylvania rules are at least as unforgiving to plaintiffs as the standards Judge Buchwald applied in finding claims time-barred in the USD LIBOR MDL—namely, the Second Circuit's "inquiry notice" standard, under which the limitations period begins to run "when a plaintiff has discovered his injury."  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 698 (S.D.N.Y. 2013) ("*LIBOR I*"); *see also id.* at 699 (explaining that the same "inquiry notice" standard applies to accrual of RICO claims in the Second Circuit).

cause,' a court may determine 'that the discovery rule does not apply [to toll the statute of limitations] as a matter of law.'" *BPP*, 2013 WL 6003701, at *6 (quoting *Ciccarelli v. Gichner Sys. Grp., Inc.*, 862 F. Supp. 1293, 1301 (M.D. Pa. 1994)); *see also U.S. Gypsum Co.*, 359 F.3d at 238 (only facts showing "substantial and diligent investigation" during limitations period could toll RICO statute of limitations after "storm warnings" trigger a duty to inquire).

Under these standards, Plaintiff's contention that he lacked notice of alleged USD LIBOR manipulation until 2012 is unsupportable. Opp'n 7.[4] "[A] statute of limitations is not suspended simply because a plaintiff is unaware of its injury; instead, the plaintiff must be *reasonably* unaware." *BPP*, 2013 WL 6003701, at *6 (emphasis in original). Plaintiff admits that doubts about the reliability of USD LIBOR were expressed in the media in May 2008. *See* Opp'n 6. As two courts have already found, by mid-2008, numerous prominent news outlets had published detailed reports on the subject, creating "substantial evidence to support the conclusion that LIBOR was artificially low and had been for some time." *BPP*, 2013 WL 6003701, at *8; *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 700-04 (S.D.N.Y. 2013) ("*LIBOR I*"); *see also* Defs.' Br. 11-12. This substantial evidence put Plaintiff "on inquiry notice of [his] injury based on *any* sort of LIBOR manipulation" by May 29, 2008. *LIBOR I*, 935 F. Supp. 2d at 708-10 (emphasis in original); *see also BPP*, 2013 WL 6003701, at *11 (same under Pennsylvania law); Defs.' Br. 10-12. Plaintiff plainly possessed "constructive knowledge of at least some form of significant harm"—his alleged injury, which stems from supposed LIBOR manipulation—"and of a factual cause linked to another's conduct," namely, alleged underreporting by LIBOR banks, including RBS. *Gleason*, 15 A.3d at 484.

---

[4] Plaintiff does not dispute that his "debt collection" claims under the FDCPA and FCRA, which arose out of the allegedly wrongfully defaulted loan, accrued in August 2010 when he received the default letter from Citizens. *See* Defs.' Br. 13. Because these claims are subject to one- and two-year statutes of limitations, they were time barred before the February 28, 2014 filing of the complaint. *Id.*

Plaintiff argues that he lacked notice because of statements in the media "accepting the integrity of LIBOR … after September 2008." Opp'n 6.  This misses the mark.  Indeed, the court presiding over the USD LIBOR MDL has already rejected this argument, holding that from May 30, 2008 to April 14, 2009 "the publicly available literature" still "made clear that LIBOR was, in all probability, still artificial" and a Plaintiff "would have discovered his injury had he exercised reasonable diligence" during that time.  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262, 2014 WL 2815645, at *19 (S.D.N.Y. June 23, 2014).  That court has also correctly rejected Plaintiff's argument that certain banks' denials of wrongdoing until 2011 prevented Plaintiff from learning of the alleged USD LIBOR suppression.  Opp'n 3, 7.  "A person of ordinary intelligence would have understood that defendants each had a strong incentive to portray themselves as truthful," and thus would not have "reasonably rel[ied] on the[se] statements to allay [their] concern."  *LIBOR I*, 935 F. Supp. 2d at 705; *see also BPP*, 2013 WL 6003701, at *9 (similar).  Plaintiff's other assertions are also meritless.  For instance, Plaintiff's arguments regarding what various government agencies or officials supposedly knew are irrelevant because inquiry notice focuses on what the "*injured party* knows, or in the exercise of reasonable diligence should have known"—not what government officials knew or believed.  *Walsh v. Quinn,* Civ. No. 09-167, 2009 WL 2207816, at *2 (W.D. Pa. July 23, 2009) (Cohill, J.) (emphasis added) (internal quotation marks omitted), *aff'd*, 359 F. App'x 273 (3d Cir. 2009).[5] Plaintiff is also wrong that the alleged absence of movement in Defendants' stock prices

---

[5] Regardless, regulators—unlike Plaintiff—began investigating supposed LIBOR manipulation in 2008 in response to media coverage.  *See, e.g.*, FSA, Internal Audit Report 69 (Mar. 2013), *available at* www.fsa.gov.uk/static/pubs/other/ia-libor.pdf ("[T]he CFTC contacted the FSA in June 2008 regarding media coverage" about potential LIBOR manipulation, and that these discussions "ultimately led to further investigations and the financial penalties imposed on firms.").

undermines inquiry notice.  *See, e.g.*, *Freidus v. ING Groep N.V.*, 736 F. Supp. 2d 816, 829 (S.D.N.Y. 2010) (stock price decline "not necessary" to a finding of inquiry notice).[6]

Just like the plaintiffs in the USD LIBOR MDL and *BPP*, Plaintiff here was on inquiry notice under Pennsylvania and federal law by no later than May 29, 2008, and he pleads no facts that would indicate he made any further inquiry and thus alleges no diligence.  Accordingly, Plaintiff may not avoid the two and four-year statutes of limitations, and his claims are time-barred.

## III.    Plaintiff Lacks Standing As A Guarantor

Under Pennsylvania state law, Plaintiff cannot assert a claim as a guarantor that is properly brought by the borrower corporations.  *See Hill v. Ofalt*, 85 A.3d 540, 552 (Pa. Super. Ct. 2014) (holding that guarantors may not assert claims for injuries "dependent upon and derivative to the corporate injury").  Plaintiff makes no allegation in the Amended Complaint that his injuries are anything more than derivative of the borrower-corporations' injuries, and he thus cannot assert those claims.  *See* Defs.' Br. 13-14.[7]

Plaintiff's argument that the case must be remanded to state court if he lacks standing as a guarantor is premised upon a misunderstanding of Defendants' argument.  Remand is required only where the court lacks subject matter jurisdiction over a case removed from state court.  *See* 28 U.S.C. § 1447(c); *Bromwell v. Michigan Mut. Ins. Co.*, 115 F.3d 208, 213 (3d Cir. 1997).

---

[6] Indeed, it is hardly surprising that the market did not react strongly to the publication of any one article in spring of 2008 because the market had been steadily receiving information about possible LIBOR manipulation since late 2007.

[7] *Delahanty v. First Pennsylvania Bank, N.A.*, 464 A.2d 1243 (Pa. Super. Ct. 1983), upon which Plaintiff relies, *see* Opp'n 8, is inapposite.  In *Delahanty*, the suit was brought on behalf of the borrower-corporation in addition to the guarantors, thus obviating the need to address the issue.  Moreover, the *Delahanty* court recognized that guarantors' liabilities (and implicitly, their resulting injuries) are derivative and duplicative of those of the corporation.  *See* 464 A.2d at 1269 (recognizing that because a creditor recovered against the guarantors, it could not also recover against the borrower-corporation).

While the absence of Article III standing deprives a federal court of subject matter jurisdiction over a plaintiff's claims, *see Berg v. Obama*, 586 F.3d 234, 242 (3d Cir. 2009), Defendants did not challenge the Court's subject matter jurisdiction based on Plaintiff's allegations, *see generally* Defs.' Notice of Mot. to Dismiss the Am. Compl. (ECF No. 46); Defs.' Br. (motion to dismiss on 12(b)(6), not 12(b)(1) grounds); *see also* Am. Compl. ¶ 34 (ECF No. 39) (alleging the "raiding" and emptying of corporate and trust accounts that "wreak[ed] disarray upon [Plaintiff's] businesses"); *id.* ¶ 175 (alleging damages to Plaintiff's property and business interests in amount of $7.3 million).  The question of which *party* may properly bring claims for an injury is an issue of prudential standing—specifically, third-party standing—not of Article III standing.  *See Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 757 (7th Cir. 2008) (recognizing that question of whether corporation or shareholder suffered injury is one of third-party, not Article III, standing); *Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago*, 877 F.2d 1333, 1336 (7th Cir. 1989) (recognizing that both guarantors and shareholders suffer injuries derivative of corporation's injury).  And the Third Circuit has recognized that the absence of prudential standing does not deprive the court of subject matter jurisdiction to address the merits of a case.  *See In re Erie Forge & Steel, Inc.*, 418 F.3d 270, 275 n.8 (3d Cir. 2005) (holding that unlike an Article III standing issue, a "prudential standing" issue "may be bypassed in favor of deciding the merits"); *see also Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 232 (3d Cir. 2013) (recognizing that antitrust standing, another prudential standing principle, was non-jurisdictional).[8]

---

[8] Plaintiff mistakenly relies upon *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534 (3d Cir. 1994), for the proposition that the absence of any type of standing requires remand.  *See* Opp'n 10.  *First*, *Wheeler* held that the plaintiff there lacked Article III standing and remanded on that basis.  The discussion of prudential standing was dicta and does not support Plaintiffs' theory here.  *See* 22 F.3d at 538-39.  *Second*, in any event *Wheeler* predates *Erie Forge* and *Ethypharm* such that the latter cases are controlling.

Because Plaintiff cannot assert claims that properly belong to the borrower-corporations, and because this does not deprive the Court of jurisdiction, Plaintiff's claims should be dismissed with prejudice.

## IV.  Plaintiff Is Estopped by His Failure to Raise These Claims in Bankruptcy Court

Plaintiff is also judicially estopped from asserting his claims because he failed to disclose them in bankruptcy.  Plaintiff's bankruptcy case ran from September 30, 2010 to September 28, 2011.  *In re Hvizdak*, No. 10-26949, Dkt. Nos. 1, 296 (Bankr. W.D. Pa. Sept. 30, 2010, Sept. 28, 2011).[9]  Plaintiff was on notice of Defendants' alleged misconduct related to LIBOR no later than May 29, 2008, but Plaintiff willfully failed to disclose his claims to the bankruptcy court during the pendency of those proceedings.  Accordingly, his claims should be dismissed to "protect the integrity of the judicial process by prohibiting [plaintiff] from deliberately changing positions according to the exigencies of the moment" and "playing fast and loose with the courts."  *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (internal quotation marks & citations omitted).

Plaintiff cannot rescue his claims by contending that neither he nor his lawyer "had [] reason to know" about LIBOR manipulation during the pendency of the bankruptcy action. Opp'n 11.  Not only was Plaintiff on inquiry notice of such conduct by May 2008, *see supra* pp. 2-6, but by April 2011—one month before Plaintiff filed his proposed Chapter 11 Plan and third amended disclosure statement in the bankruptcy proceeding, *see id*. Dkt. No. 172, at 10 (May 3, 2011)—multiple plaintiffs had already filed lawsuits, including against RBS entities, alleging the same facts on which Plaintiff seeks to premise his claims.  *See In re LIBOR-Based Fin. Instruments Antitrust Litig*., MDL No. 11-2262, 2011 WL 5007957, at *1 nn.1-2 (S.D.N.Y.

---

[9] For convenience, subsequent citation to filings in Plaintiff's bankruptcy case are abbreviated "Dkt. No. X (Date)."

- 8 -

Oct. 18, 2011) (listing 21 class actions alleging LIBOR manipulation filed between April and

August 2011).  Plaintiff also received the default letter from Citizens Bank in August 2010—one

month before commencing his bankruptcy action—putting him on notice of any claims arising

from Defendants' allegedly unlawful defaulting of the loan.  *See* Orig. Compl. Ex. A; *see also*

Defs.' Br. 15-16.  Plaintiff thus possessed "enough information … to suggest that [he] may have

a possible cause of action" arising out of LIBOR manipulation and the loan default and,

accordingly, his current claims were "'known' cause[s] of action such that [they] must [have]

be[en] disclosed" in the bankruptcy proceeding.  *Krystal Cadillac-Oldsmobile GMC Truck, Inc.*

*v. Gen. Motors Corp.*, 337 F.3d 314, 323 (3d Cir. 2003).[10]

Further, "a rebuttable inference of bad faith" arises where, as here, "averments in the

pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face

of an affirmative duty to disclose."  *Krystal Cadillac-Oldsmobile*, 337 F.3d  at 321.  Just as the

Third Circuit concluded in *Krystal Cadillac-Oldsmobile*, Plaintiff had a strong motive not to

disclose his potential claims to his creditor, Citizens Bank, which might have sought to preempt

or settle such claims as part of the bankruptcy proceedings.  *Id.* at 323; *see also Hardee-Guerra*

*v. Shire Pharm.*, 737 F. Supp. 2d 318, 329 (E.D. Pa. 2010) ("As a person seeking to discharge

her debts in bankruptcy, Hardee-Guerra had a clear motive to conceal her discrimination case

from her creditors.").  Plaintiff's conclusory assertion in his opposition brief that he "did not

make improper usage of any judicial machinery," Opp'n 13, is belied by the bankruptcy court's

---

[10] That these omissions were made by Plaintiff's bankruptcy attorney provides no defense to the
application of judicial estoppel.  *See, e.g.*, *Yetter v. Wise Power Sys., Inc.*, 929 F. Supp. 2d 329, 332 (D.
Del. 2013) ("Plaintiff cites reliance upon his legal counsel's advice against disclosing the potential claim
to overcome this bad faith presumption.  This excuse has been found to be insufficient." (citing *Meisinger
v. Prudential Ins. Cos. of Am.*, Civ. A. No. 2:10-cv-5885, 2011 WL 2036508, at *3 (D.N.J. May 23,
2011); *Hardee-Guerra v. Shire Pharm.*, 737 F. Supp. 2d 318, 330 (E.D. Pa. 2010))).  Plaintiff
"voluntarily chose this attorney as his representative in the action, and he cannot now avoid the
consequences of the acts or omissions of this freely selected agent."  *Link v. Wabash R.R. Co.*, 370 U.S.
626, 633-34 (1962).

threats to hold Plaintiff in "contempt and [impose] sanctions [] for failure to file complete and accurate schedules and Statement of Financial Affairs," Dkt. No. 99 (Jan. 21, 2011). It is further belied by the bankruptcy trustee's recommendation—eventually adopted by the court—that Plaintiff be held "accountable" for his repeated "bad faith" and "willful" disclosure failures in order to prevent him from again "utiliz[ing] the bankruptcy court to gain a litigation advantage against his creditors," Dkt. No. 287 at 8-10 (Sept. 14, 2011); Dkt. No. 296 at 1-2 (Sept. 28, 2011); *see also* Defs.' Br. 3-5, 18.

The policy for applying judicial estoppel under these circumstances is clear: "Such nondisclosures affect creditors' willingness to negotiate their claims and enhance the debtor's bargaining position by making the pot that creditors look to for recovery appear smaller than it really is." *Krystal Cadillac-Oldsmobile*, 337 F.3d at 325; *see also, e.g*., *Yetter v. Wise Power Sys., Inc.*, 929 F. Supp. 2d 329, 332 (D. Del. 2013) ("[D]isclosure requirements are crucial to the system as creditors must rely upon the debtor's asserted assets in determining whether to settle the debt for a lesser amount than owed. This harm is not one that can be cured by a lesser sanction than judicial estoppel." (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) and *Krystal Cadillac-Oldsmobile*, 337 F.3d at 325)). "Dismissal is necessary to prevent [plaintiff] from profiting from [his own] omission[s]" and "to preserve the

integrity of the earlier [bankruptcy] proceedings." *Krystal Cadillac-Oldsmobile,* 337 F.3d at 325

(quoting *Oneida Motor Freight, Inc.*, 848 F.2d at 418).[11]

So too here:  Anything short of barring Plaintiff's claims would "undermine the integrity

of [] both the bankruptcy and judicial processes" and would "send a message that a debtor should

consider disclosing potential assets only if he is caught concealing them." *Ortlieb v. Hudson*

*Bank*, 312 F. Supp. 2d 705, 715 (E.D. Pa. 2004), *aff'd*, 128 F. App'x 214 (3d Cir. 2005).

Plaintiff's silence as to his claims in the bankruptcy court estops him from asserting those claims

here and they should be dismissed.

## V.    Plaintiff Fails to State Any Cognizable Claim

### A.    Plaintiff Fails to State a Claim Under RICO

Plaintiff fails to state a substantive RICO claim or a RICO conspiracy claim because he

fails to allege any of the elements of a RICO violation.  Plaintiff's opposition brief merely

confirms these deficiencies.

*First*, Plaintiff fails to allege the requisite concrete financial loss to business or property

necessary to sustain a claim under RICO, much less any injury proximately caused by the alleged

---

[11] This case is materially distinguishable from *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355 (3d Cir. 1996), on which Plaintiff relies.  *See* Opp'n 13.  There, the court held that a debtor's failure to disclose claims worked *against* the debtor's interest, negating the inference of bad faith.  *Id.* at 363.  Here, by contrast, Plaintiff's conduct before the bankruptcy court is characterized by repeated failures to honestly disclose his assets—failures for which he was admonished not only by creditors, but by the court and the Trustee.  *See also, e.g.*, *Krystal Cadillac-Oldsmobile*, 337 F.3d at 324-25 (distinguishing *Ryan*).  In addition, Plaintiff's argument that Defendants have not "done equity," Opp'n 11-12, is irrelevant to judicial estoppel, which is "intended to protect the courts rather than the litigants." *Fleck v. KDI Sylvan Pools, Inc.,* 981 F.2d 107, 121-22 (3d Cir. 1992).  Plaintiff's bad faith conduct warrants judicial estoppel; Defendants' alleged misconduct with respect to LIBOR manipulation is beside the point.  *See, e.g.*, *In re Jackson*, 574 F. App'x 317, 319-20 (5th Cir. 2014) (rejecting "unclean hands" argument and explaining that "the doctrine of judicial estoppel 'is intended to protect the judicial system, rather than the litigants.'"); *In re Richardson*, 497 B.R. 546, 558 (Bankr. S.D. Ind. 2013) (similar); *Cricket Commc'ns, Inc. v. Trillium Indus., Inc.*, 235 S.W.3d 298, 309 (Tex. App. 2007) (similar).  The cases Plaintiff cites, *see* Opp'n 12, are inapposite because they address equitable estoppel rather than the judicial estoppel applicable here.

RICO violation.  *See* Defs.' Br. 20.  A guarantor cannot recover under RICO for injuries suffered

solely by the corporation.  *See, e.g.*, *Kaiser v. Stewart*, 965 F. Supp. 684, 688-90 (E.D. Pa. 1997).

Plaintiff's assertion in his opposition brief that he suffered direct injury because he "became

personally indebted to vulture investors with a bridge loan while awaiting the IRS refund that

would pay off the RBS group," Opp'n 9, also cannot suffice to state a RICO injury.  Because the

asserted "bridge loan" was not part of the original loan transaction from which Plaintiff alleges

injury, any injury therefrom involves an "attenuated chain of causation" that is "too remote from

the alleged wrongdoing by Defendants to establish the requisite proximate cause for RICO

standing."  *Vavro v. Albers*, No. 2:05-CV-321, 2006 WL 2547350, at *25-26 (W.D. Pa. Aug. 31,

2006) (multiple "intervening links between the alleged racketeering acts and alleged harm …

demonstrates that Plaintiff's claimed injury is indirect and remote."), *aff'd sub nom. Vavro v.

A.K. Steel Co.*, 254 F. App'x 134 (3d Cir. 2007); *see also, e.g.*, *Triumph Packaging Grp. v.

Ward*, 877 F. Supp. 2d 629, 642 (N.D. Ill. 2012) ("Courts have recognized that employees who

suffer indirect injuries as a result of conduct aimed at the employer do not have standing under

RICO." (collecting cases)).

Plaintiff also fails to explain how his businesses' loan default or the alleged unlawful debt

collection were related to any alleged scheme by Defendants to suppress LIBOR, nor could he

where the alleged core racketeering activity, *i.e.*, the suppression of LIBOR, would have actually

*lowered* the interest payments on his businesses' LIBOR-linked loan (and subsequently under the

forbearance agreements).  *See* Defs.' Br. 21.  This is also fatal to his RICO standing.

*Second*, Plaintiff's RICO claim fails because he does not allege a valid enterprise.  As

discussed in Defendants' opening brief, none of the facts in Plaintiff's amended complaint or

RICO Case Statement describes any relevant relationship among Defendants, the purpose of

Defendants' alleged enterprise, or the requisite organization, structure, and function of an enterprise as a continuing unit.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 369 (3d Cir. 2010); *see also* Defs.' Br. 21-22.

Plaintiff has no response.  Instead, he merely restates the insufficient proposition that "[t]he RBS defendants have an enterprise consisting of the banks, entities and the senior vice president . . . who try to collect debts made unlawful by the LIBOR manipulation collusion and conspiracy."  Opp'n 14.  But a RICO "enterprise" must "be more than an association of individuals or entities conducting the normal affairs of a defendant corporation."  *Brittingham v. Mobil Corp.*, 943 F.2d 297, 301 (3d Cir. 1991); *see also* Defs.' Br. 23 n.11.[12]  Merely because all of the Defendants were purportedly involved in Plaintiff's loan issuance and debt collection does not lead to the conclusion that they were an "enterprise" beyond those circumstances.  Plaintiff's allegations do not indicate the existence of "an independent, free-standing association-in-fact [that] engages in a pattern of activity which differs from the usual and daily activities of its members."  *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2006 WL 2850607, at *17 (D.N.J. Oct. 3, 2006).  Rather, the amended complaint makes clear that "the enterprise engages in the same business activities and provides the same services as the Defendants themselves."  *Id.*  Plaintiff establishes only that RBS defendants and the other members of the purported enterprise do business together, with debt collectors providing services to RBS defendants related to loan financing.  That is not enough to state a valid RICO enterprise.

*Third*, Plaintiff fails to allege the requisite pattern of racketeering activity.  He fails to allege any specific acts committed to perpetrate the alleged scheme of LIBOR manipulation,

---

[12] Plaintiff's assertion that Defendants attempted to "collect debts" allegedly "made unlawful by the LIBOR manipulation collusion and conspiracy," Opp'n 14, also cannot state a valid RICO claim here.  Under RICO, an "unlawful debt" is one incurred in illegal gambling activity or in violation of usury laws.  18 U.S.C. § 1961(6).  Plaintiff's claims have nothing to do with either of these situations.

much less the dates of the predicate acts, participants in those acts, and a description of the facts surrounding them.  Defs.' Br. 23-24.  Plaintiff asserts that he will be "incorporating by reference" various "excerpts of pleadings from sister district courts filed by municipal governments and federal corporations and administrations that better express the theory and history of the LIBOR swindle."  Opp'n 17.  Although Plaintiff failed to include any of these documents with his opposition, they would not, in any event, save his claims because such documents would not explain how the alleged scheme to manipulate LIBOR relates to the single act of Defendants placing Plaintiff's businesses' loan into default, a key defect in Plaintiff's allegations.  *See*, *e.g.*, *Young v. W. Coast Indus. Relations Ass'n, Inc.,* 763 F. Supp. 64, 71 (D. Del. 1991), *aff'd*, 961 F.2d 1570 (3d Cir. 1992); *see also* Defs.' Br. 23-24.[13]

Finally, Plaintiff fails to state a RICO conspiracy claim under 18 U.S.C. § 1962(d) because he fails to state an underlying substantive RICO claim.  *See* Defs.' Br. 24.

### B.     Plaintiff Fails to State Any Other Federal or State Claim

Plaintiff does not expressly oppose Defendants' motion to dismiss his Fair Credit Reporting Act, Fair Credit Billing Act, or common law fraud claims.  Those claims should be dismissed for the reasons discussed in Defendants' opening brief.  *See* Defs.' Br. 24-27.

Plaintiff does include a section in his opposition related to Debt Collectors.  Opp'n 22-27. These claims do not appear to be alleged against the undersigned Defendants, and any involvement of the undersigned Defendants in these claims appears to be limited to the insufficient allegations of participation in racketeering activity that is addressed in the prior

---

[13] Such an addition would also be improper because "it is well settled that a plaintiff may not amend a complaint through briefs in opposition to a motion to dismiss."  *Swift v. Pandey,* C.A. No. 13–650, 2013 WL 5486851, at *3 (D.N.J. July 1, 2013) (citing *Pennsylvania ex. rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)); *see also id.* (finding a pro se plaintiff could not amend his complaint through an opposition brief to a motion to dismiss).

section.  To the extent that any of these arguments do pertain to the undersigned Defendants, however, Plaintiff fails to allege any involvement in any debt collection activity and makes no argument providing a basis for holding the undersigned Defendants liable for others' activity.

## VI.    The Court Lacks Personal Jurisdiction Over RBS plc

Plaintiff does not oppose Defendants' motion to dismiss his claims against RBS plc for lack of personal jurisdiction.  For the reasons stated in Defendants' opening brief, *see* Defs.' Br. 27-28, RBS plc is not subject to personal jurisdiction in this forum.

## VII.   Plaintiff Should Not Be Allowed to Amend His Complaint

For the reasons stated in Defendants' opening brief, *see* Defs.' Br. 28, the Court should not grant Plaintiff leave to amend his complaint a second time, which would be futile.  Plaintiff's opposition only confirms the futility of any further amendment.

## CONCLUSION

For the foregoing reasons, and the reasons stated in Defendants' opening brief, Plaintiff's amended complaint should be dismissed in its entirety with prejudice.

Dated: January 19, 2015                    Respectfully submitted,

                                           */s/ Robert J. Hannen*
                                           Robert J. Hannen
                                           PA I.D. No. 63432
                                           Eckert Seamans Cherin & Mellott, LLC
                                           600 Grant Street , 44th Floor
                                           Pittsburgh, PA 15219
                                           Direct (412) 566.5911
                                           rhannen@eckertseamans.com

                                           *Attorneys for Defendants Citizens Bank of*
                                           *Pennsylvania, RBS Citizens, N.A., RBS*
                                           *Citizens Financial Group, Inc., The Royal*
                                           *Bank of Scotland plc, and Karen D.*
                                           *Budniak*

## CERTIFICATE OF SERVICE

I, Robert J. Hannen, certify that the above Reply Memorandum in Support of Defendants'

Motion to Dismiss has been filed with the clerk for the United States District Court for the

Western District of Pennsylvania, using the Electronic Case Filing ("ECF") system of the Court,

and has been served upon the parties via the methods specified below:

**Via Federal Express**
Richard C. Hvizdak
110 South Main Street
Pittsburgh, PA 15220

**Via ECF**
Jason G. Wehrle, Esq.
Mintzer Sarowitz Zeris Ledva & Meyers LLP
EQT Plaza, 625 Liberty Avenue, Suite 390
Pittsburgh, PA 15222
(412) 928-0502
Email: jwehrle@defensecounsel.com
*Counsel for Richard J. Boudreau & Associates, LLC*

Michael E. Giblin
Swartz Campbell
600 Grant Street
4750 U.S. Steel Building
Pittsburgh, PA 15219
(412) 232-9800
Email: mgiblin@swartzcampbell.com
*Counsel for Universal Fidelity LP*

Ross S. Enders
Sessions, Fishman, Nathan & Israel, LLC
2303 Oxfordshire Road
Furlong, PA 18925-1251
215-794-7207
Fax: 215-794-5079
Email: renders@sessions-law.biz
*Counsel for Mercantile Adjustment Bureau*

*/s/ Robert J. Hannen*
Robert. J. Hannen

- 17 -