IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD C. HVIZDAK, ) | |
|     Plaintiff, ) | |
| ) | Civil Action No. 14-406 |
| v. ) | |
| ) | Magistrate Judge Robert C. Mitchell/ |
| CITIZENS BANK OF PENNSYLVANIA, ) | District Judge Maurice B. Cohill |
| RBS CITIZENS, NA, CITIZENS ) | |
| FINANCIAL GROUP, NAS, ROYAL ) | |
| BANK OF SCOTLAND, SENIOR V.P. ) | |
| KAREN D. BUDNIAK, ) | |
|     Defendants. ) | |

## REPORT AND RECOMMENDATION

ROBERT C. MITCHELL, United States Magistrate Judge.

### I. RECOMMENDATION

Plaintiff Richard C. Hvizdak initiated this action, *pro se*, against Defendants on February 28, 2014 in the Court of Common Pleas of Allegheny County, Pennsylvania. After the case was removed to this Court and the Plaintiff amended his complaint, Defendants filed a motion to dismiss Plaintiff's amended complaint on December 1, 2014. *See* Def.'s Mot. to Dismiss [ECF No. 46]. Plaintiff responded thereto on January 7, 2015 [ECF No. 50] and Defendants submitted their reply on January 19, 2015 [ECF No. 52]. Therefore, the motion is fully briefed and ripe for disposition. For the following reasons, it is respectfully recommended that Defendants' motion to dismiss [ECF No. 46] be granted and Plaintiff's complaint be dismissed with prejudice.

### II. REPORT

    a. Background

Because the Court recommends that Plaintiff's complaint be dismissed because he lacks standing, the factual predicate will be restricted to that necessary for the disposition of this motion.

*i.     LIBOR Rate Manipulation Scheme*

For context purposes only, the Court will discuss the London InterBank Offered Rate ("Libor" or "LIBOR") rate manipulation scandal, which Plaintiff complains injured him.[1] Libor "is a benchmark interest rate disseminated by the British Bankers' Association [BBA] based on the rate at which certain banks predict they can borrow funds. Libor is a reference point in determining interest rates for financial instruments in the United States and globally." *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 903, 190 L. Ed. 2d 789 (2015). The general allegation is that certain banks, including Defendants, understated their borrowing costs, "thereby depressing Libor and enabling banks to pay lower interest rates on financial instruments sold to investors." *Id.* (citing *In re Libor-Based Fin. Instruments Antitrust Litig.*, 802 F.Supp.2d 1380 (U.S. Jud. Pan. Mult. Lit. 2011)). More specifically, it was alleged that the banks manipulated Libor "by deliberately and intentionally understating their respective borrowing costs to the BBA, and that, by doing so, they paid lower interest rates to customers who bought [the banks'] products with rates of return tied to Libor, and also avoided disclosing the true risk premium that the market was attaching to them during the global financial crisis." *In re Libor-Based Fin. Instruments Antitrust Litig.*, 802 F. Supp. 2d 1380, 1381 (U.S. Jud. Pan. Mult. Lit. 2011).

*ii.     Plaintiff's Claims*

In March 2007, two of Plaintiff's companies, HHDR, LP, a Pennsylvania limited partnership ("HHDR") and RCH Pittsburgh, LLC, a Pennsylvania limited liability company ("RCH Pittsburgh") secured a $2.5 million commercial loan from Defendant Citizens Bank. On loan documents, Plaintiff indicated that he was the "manager" of both HHDR and RCH

---

[1]     This case was conditionally transferred to the Judicial Panel on Multidistrict Litigation for consideration in the Multidistrict Litigation regarding Libor manipulation. The Panel vacated the conditional transfer order on August 12, 2014 effectively remanding the case to this Court and this Court lifted the stay on the proceedings. Order of 8/12/2014 [ECF No. 18].

Pittsburgh. Certain trusts in Plaintiff's name, in addition to other companies in which Plaintiff was the president or manager served as guarantors of the loan. In August 2010, the businesses defaulted on the loan. Citizens attributed the default to the following:

1. Loan guarantor RCH Realty's failure to furnish to Citizens a semi-annual financial statement for the period ended June 30, 2010, as required under the loan agreement;

2. Loan guarantors Plaintiff and Plaintiff's trusts failure to furnish to Citizens annual personal financial statements for the year ended December 31, 2009, as required under the loan agreement;

3. Loan guarantor RCH Realty's failure to demonstrate compliance with the Cash Flow/Debt Service Ratio provision of the loan agreement for the 2009 calendar year;

4. Borrowers' and Guarantors' failure to demonstrate compliance with the Liquid Assets provision of the loan agreement;

5. Failure to pay property taxes for 2010;

6. An unpaid payment due September 13, 2010.

*See* Forbearance Agreement [ECF No. 47-1] at ¶¶ D-E.

Plaintiff filed for bankruptcy on September 30, 2010 which was later dismissed in September 2011. *See In re Hvizdak*, No. 10-26949 [Docket No. 1] (Bankr. W.D.Pa. Sept. 30, 2010). In November 2010, while the bankruptcy was pending, HHRD and RCH Pittsburgh and Citizens Bank entered into a forbearance agreement for the loan. The forbearance agreement specified that the interest rate would be calculated as "LIBOR plus" which is a floating interest rate based on LIBOR. *See id.* at ¶ 7(c). The forbearance agreement was amended on April 30, 2011 to extend the forbearance. *See* First Amendment to Forbearance Agreement [ECF No. 47-2].

Plaintiff filed suit in the Court of Common Pleas of Allegheny County and Defendants removed the suit to this Court on March 26, 2014. In accordance with this Court's order, Plaintiff filed his RICO case statement on September 16, 2014. With leave of court, Plaintiff later amended his complaint setting forth claims against, *inter alia*, Citizens Bank and its corporate parents, RBS Citizens, N.A., RBS Citizens Financial Group, Inc., and the Royal Bank of Scotland, plc, and Citizens Bank senior vice president Karen D. Budniak.[2] Plaintiff's complaint generally alleges that Defendants are involved in a RICO conspiracy because they acted "in agreement, and/or in the alternative, acting in concert have engineered a series of far reaching schemes both coercive and fraudulent to commit an astonishing array of white collar crimes under color of law." Am. Compl. [ECF No. 39] at ¶ 48-49. While Plaintiff's complaint is largely filled with meandering legal standards and case quips interpreting RICO and the other statutes he seeks to hold Defendants accountable under, the Court need not take these into consideration and may properly exclude them in deciding this motion.[3] Stripping all of these legal conclusions from the complaint, Plaintiff complains that because his companies' original loan, forbearance agreement and amendment to the forbearance agreement include provisions that the interest rate paid was based on Libor, Defendants have acted fraudulently and in violation of RICO because of the Libor interest rate manipulation scheme. Defendants have moved to dismiss the complaint, providing the Court with multiple reasons why Plaintiff's complaint should be dismissed with prejudice. Generally, Defendants argue that Plaintiff's

---

[2]  Originally, Plaintiff set forth claims against a myriad of others, including several third party debt collectors. These parties have since been dismissed from the case with prejudice. *See* Order of February 3, 2015 Granting Stipulation of Voluntary Dismissal [ECF No. 56]; Order of March 3, 2015 Granting Stipulation of Voluntary Dismissal [ECF No. 58]; Order of April 1, 2015 Granting Motion for Voluntary Dismissal [ECF No. 61].

[3]  *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130-31 (3d Cir. 2010) (explained *infra*).

claims have been waived under the forbearance agreement, the claims are time barred, Plaintiff lacks standing as a guarantor, Plaintiff is estopped from bringing these claims because he failed to do so in the bankruptcy court, Plaintiff fails to state a RICO claim or any other state or federal claim, and that the court lacks personal jurisdiction over RBS plc. Because this Court recommends that Plaintiff's complaint be dismissed with prejudice because he does not have standing to assert the claims belonging to his corporations, this report is limited to that discussion.

    b. Standard of Review

To survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The reviewing court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where the factual allegations of the complaint conceivably fail to raise, directly or inferentially, the material elements necessary to obtain relief under a legal theory of recovery. *Twombly*, 550 U.S. at 561 (citations omitted). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555). The factual and legal elements of a claim should be separated, with the court accepting all well-pleaded facts as true and disregarding all legal conclusions. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130-31 (3d Cir. 2010). Under this standard, civil complaints "must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009)

(internal quotations omitted). A court in making this determination must ask "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 583 (quoting *Scheuer v. Rhoads*, 416 U.S. 232, 236 (1974) (internal quotations omitted)).

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may take into consideration "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" as well as "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Although a district court may not generally consider matters extraneous to pleadings when ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), it may consider documents <u>integral to or explicitly relied upon</u> in a complaint without converting the motion to dismiss into a motion for summary judgment. *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 (3d Cir. 2010); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis added). Accordingly, the Court may take into consideration the forbearance agreements attached to the motion to dismiss in making this recommendation, as the authenticity of those documents are undisputed and based on Plaintiff's claims, without converting Defendants' motion into one for summary judgment.

    c. <u>Discussion</u>

        i. *Plaintiff's Standing*

The doctrine of standing imposes three requirements: first, that the plaintiff "suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not 'conjectural' or 'hypothetical[;]' second,

"there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court[;]" and lastly, "it must be 'likely' as opposed to merely 'speculative' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (internal citations and quotation marks omitted). Additionally, Federal Rule of Civil Procedure 17(a) mandates that a civil action be "prosecuted in the name of the real party in interest" such that the plaintiff has standing to assert the claims he alleges injured him. Fed. R. Civ. P. 17(a)(1).

It is well recognized that a sole shareholder or owner of a corporation has no individual right of action against third parties for damages that result directly from injuries to the corporation. As stated by the United States Court of Appeals for the Third Circuit:

> [t]he legal fiction of corporate existence corresponds with the view that an injury to the corporate body is legally distinct from an injury to another person. Thus it is well established, under Pennsylvania law, that where fraud, mismanagement, or other wrong damages a corporation's assets, a shareholder does not have a direct cause of action. . . . Rather, it is the corporate body that suffers the primary wrong and, consequently, it is the corporate body that possesses the right to sue.

*Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 348 (3d Cir. 2001) (internal citations omitted). *See also John L. Motley Assoc., Inc. v. Rumbaugh*, 104 B.R. 683, 686-87 (E.D.Pa. 1989) ("an action to redress injuries to the corporation cannot be maintained by an individual shareholder, but must be brought as a derivative action in the name of the corporation").

Moreover, this view has been applied to bar an individual guarantor of a corporation's debt from bringing suit on behalf of the corporation. "[I]t is generally accepted that guarantors

of a corporation's debt, even if those guarantors are also stockholders, do not have standing to bring an action if the only harm suffered is derivative of the harm the corporation suffered." *Baer v. Glanzburg, Tobia & Associates, Inc.*, Civ. A. No. 01-CV-0684, 2002 WL 32356397, at *2 (E.D.Pa. Jan. 9, 2002) (citations omitted); *see also Temp-Way Corp v. Continental Bank*, 139 B.R. 299, 316-17 (E.D.Pa. 1992) *aff'd* 981 F.2d 1248 (3d Cir. 1992). In this instance, a person who pays "a personally guaranteed debt has not suffered an injury separate and distinct from that of the corporation because he is made whole if the corporation recovers; and so the rule has the salutary effect of preventing the double counting of damages." *In re Seivers*, No. 05-10656, 2006 WL 3087688, at *4 (Bankr. W.D.Pa. Oct. 26, 2006) (citations omitted).

Here, certain trusts held in Plaintiff's name were the guarantors of the commercial loans taken by HHDR and RCH Pittsburgh, both corporations owned by him. It is of no consequence whether Plaintiff is the sole shareholder of these corporations, because it is those corporations – and not Plaintiff – who have been allegedly injured. Throughout Plaintiff's amended complaint, he does not allege that he has been directly injured in any way due to the Libor manipulation scheme or (reading the complaint broadly) Defendant's debt collection practices. Rather, the losses suffered by Plaintiff, if any, due to the Libor manipulation or debt collection, are merely a consequence of the losses, if any, suffered by HHDR and RCH Pittsburgh as the loan borrowers. Plaintiff cannot bring these claims as a loan guarantor for a corporate loan taken by HHDR and RCH Pittsburgh without alleging that he personally suffered injuries not derivative of the harm suffered by his companies. For example, the only injury that Plaintiff alleges that he suffered individually is that the Defendants "besmirched" Plaintiff's credit rating and business reputation by "raiding" several of his corporate and trust accounts "to satisfy arbitrary, oppressive and unfair charges fabricated by the Bank, emptying the accounts and wreaking disarray upon the

businesses." Am. Compl. [ECF No. 39] at ¶ 34. The damages that Plaintiff alleges were suffered by corporations owned or operated by him and any purported injury to him in terms of a "besmirched" credit score is wholly derivative to the alleged harm suffered by HHDR and RCH Pittsburgh. Plaintiff lacks standing as he is merely the guarantor of a corporate loan and cannot bring claims alleging damages from the Libor rate manipulation and/or Defendant's debt collection practices for such a loan when he alleges no specific harm to him.

Moreover, because a *pro se* plaintiff cannot assert claims of a corporation in federal court, as "only an attorney may represent the interests of a corporation in a federal court[,]" Plaintiff cannot assert these claims on behalf of HHDR and RCH Pittsburgh as a *pro se* litigant. *Kilinc v. Tracfone Wireless, Inc.*, 757 F.Supp.2d 535, 537-38 (W.D.Pa. 2010) (citing *Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993)).

Accordingly, for this reason, it is respectfully recommended that Defendants' motion to dismiss be granted. Additionally, it is recommended that Plaintiff's complaint be dismissed with prejudice because amending the complaint would be inequitable and futile as it would subject the Defendants and the Court to unnecessary and unwarranted time, effort and expense. It is clear from Plaintiff's complaint, amended complaint, and RICO statements that he does not have standing to bring the claims, because he is merely the guarantor of a corporate loan and the injury he alleges is wholly derivative of those corporations' alleged injuries.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants Citizens Bank of Pennsylvania, RBS Citizens, NA, Citizens Financial Group, NAS, Royal Bank of Scotland, and Senior V.P. Karen D. Budniak's motion to dismiss [ECF No. 46] be granted and Plaintiff's complaint be dismissed with prejudice.

In accordance with Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules pertaining to Magistrate Judges, the parties are permitted until <u>June 2, 2015</u> to file written objections to this Report and Recommendation. Failure to do so may waive the right to appeal. Any party opposing written objections shall have fourteen days after the service of such objections to respond thereto.

Dated: May 19, 2015

                                          Respectfully submitted,

                                          /s Robert C. Mitchell
                                          ROBERT C. MITCHELL
                                          United States Magistrate Judge

cc:      The Honorable Maurice B. Cohill
          United States District Court
          Western District of Pennsylvania

          Richard C. Hvizdak, *pro se*
          110 South Main St.
          Pittsburgh, PA 15220

          *Counsel for Defendant*
          Robert J. Hannen, Esquire
          Eckert Seamans Cherin & Mellott, LLC
          US Steel Tower
          600 Grant Street, 44th Floor
          Pittsburgh, PA 15219-2788