IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD C. HVIZDAK,<br>    Plaintiff,<br><br>v.<br><br>CITIZENS BANK OF PENNSYLVANIA,<br>RBS CITIZENS, NA, CITIZENS<br>FINANCIAL GROUP, NAS, ROYAL<br>BANK OF SCOTLAND, SENIOR V.P.<br>KAREN D. BUDNIAK,<br>    Defendants. | Civil Action No. 14-406<br><br>District Judge Maurice B. Cohill, Jr.<br>Magistrate Judge Robert C. Mitchell |

## OPINION

### I. Procedural History

The complaint in the above-captioned case was filed in the Court of Common Pleas of Allegheny County, Pennsylvania on or about February 28, 2014. Subsequently, this action was removed to this Court by Defendants on March 26, 2014 [ECF No. 1], and was referred to United States Magistrate Judge Robert C. Mitchell for pretrial proceedings in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rules of Court 72.C and 72.D. On December 1, 2014, Defendants filed a Motion to Dismiss [ECF No. 46].

Magistrate Judge Mitchell issued a Report and Recommendation [ECF No. 67] recommending that the Motion to Dismiss be granted because Plaintiff lacks prudential standing to bring the claim as a third party. See generally Official Comm. Of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 348 (3d Cir. 2001). After *de novo* review of the relevant documents, we adopted Magistrate Judge Mitchell's Report and Recommendation [ECF No. 67] as the Opinion of the Court and dismissed Plaintiff's Amended Complaint [ECF No. 39] with prejudice. [Memorandum Order, ECF No. 72].

Plaintiff then filed a Motion to Alter or Amend Judgment [ECF No. 73]. In an Opinion and Order [ECF No. 78], we granted the motion to the extent it sought a review of our Memorandum Order [ECF No. 72] dismissing Plaintiff's Amended Complaint [ECF No. 39] with prejudice. After review, we determined that lacking standing over Plaintiff as a third party, we were deprived of subject matter jurisdiction and remanded the case to the Court of Common Pleas of Allegheny County pursuant to 28 U.S.C. § 1447(c) [ECF No. 78 at 8].

Defendant then filed a Motion for Reconsideration [ECF No. 80], requesting that we review our Opinion and Order [ECF No. 78] remanding the case to the Court of Common Pleas. In an Order on July 15, 2015 [ECF No. 81], we granted Defendant's Motion for Reconsideration to the extent that Defendants sought review of our Opinion and Order [ECF No. 78], recalled the Opinion and Order [ECF No. 78] and Clerk of Court's Letter [ECF No. 79], and stayed the Court's Order remanding this case to the Court of Common Pleas of Allegheny County pending final resolution of Defendants' Motion for Reconsideration.

We now grant Defendants' Motion for Reconsideration, recall our Order remanding the case to the Court of Common Pleas, and reinstate our Order dismissing Plaintiff's Amended Complaint with prejudice consistent with the opinion below.

**II. Factual Background**

In March 2007, two of Plaintiff's companies, HHDR, LP ("HHDR") and RCH Pittsburgh, LLC ("RCH") secured a $2.5 million commercial loan from Defendant Citizens Bank. On loan documents, Plaintiff indicated that he was the "manager" of both companies. Plaintiff used certain trusts in his name, in addition to other companies which Plaintiff served as manager or

2

president, to act as guarantors of the loan. In August 2010, HHDR and RCH defaulted on the loan. Defendant Citizens Bank attributed the default to the following:

1. Loan guarantor RCH Realty's failure to furnish to Citizens a semi-annual financial statement for the period ended June 30, 2010, as required under the loan agreement;

2. Loan guarantors Plaintiff and Plaintiff's trusts failure to furnish to Citizens annual personal financial statements for the year ended December 31, 2009, as required under the loan agreement;

3. Loan guarantor RCH Realty's failure to demonstrate compliance with the Cash Flow/Debt Service Ratio provision of the loan agreement for the 2009 calendar year;

4. Borrowers' and Guarantors' failure to demonstrate compliance with the Liquid Assets provision of the loan agreement;

5. Failure to pay property taxes for 2010; and

6. An unpaid payment due September 13, 2010.

See Forbearance Agreement [ECF NO. 47-1] at ¶¶ D-E.

Plaintiff filed for bankruptcy on September 30, 2010, which was dismissed a year later. See In re Hvizdak, No. 10-26949 (Bankr. W.D. Pa. 2010). In November 2010 while the bankruptcy case was pending, HHRD, RCH, and Citizens entered into a forbearance agreement for the loan. The forbearance agreement specified that the interest rate would be calculated as "LIBOR plus," which is a floating interest rate based on LIBOR[1]. See id. at ¶ 7(c).

---

[1] LIBOR, the London InterBank Offered Rate, "is a benchmark interest rate disseminated by the British Bankers' Association ["BBA"] based on the rate at which certain banks predict they can borrow funds. LIBOR is a reference point in determining interest rates for financial instruments in the United States and globally." Gelboim v. Bank of Am. Corp., 135 S. Ct. 897, 903 (2015). It has been alleged that banks manipulated LIBOR "by deliberately and intentionally understating their respective borrowing costs to the BBA, and that, by doing so, they paid lower interest rates to customers who bought [the banks'] products with rates of return tied to LIBOR…." In re Libor-Based Fin. Instruments Antitrust Litig., 802 F. Supp. 2d 1380, 1381 (U.S. Jud. Pan. Mult. Lit. 2011).

Plaintiff filed suit, generally alleging that Defendants are involved in a RICO conspiracy because they acted "in agreement, and/or in the alternative, acting in concert have engineered a series of far reaching schemes both coercive and fraudulent to commit an astonishing array of white collar crimes under color of law." [Am. Complaint, ECF No. 39 at ¶ 48]. Plaintiff complains that because HHDR's and RCH's original loan and forbearance agreement include provisions that the interest rate paid to Citizens was based on LIBOR, Defendants have acted in violation of RICO, common-law fraud, and civil conspiracy because of the LIBOR manipulation scheme.

**III. Standard Of Review For Motion To Dismiss A Complaint Pursuant To Federal Rule Of Civil Procedure 12(b)(6)**

Rule 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. See Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). Accord Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007). In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994). Accord Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the...claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232

(alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130–31 (3d Cir. 2010). First, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. See id. See also Fowler, 578 F.3d at 210–11. Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). Accord Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

When the complaint fails to present a prima facie case of liability, courts should generally grant leave to amend before dismissing a complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Fauver, 213 F.3d at 116–17. Rule 15(a) states: "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Among factors that may justify denying leave to amend is "futility of amendment." Foman, 371 U.S. at 182. Leave to amend may be denied as futile if the amendment could not withstand a motion to dismiss. Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983).

**IV. Legal Analysis**

When we remanded this case to state court, we did so based on our determination that Plaintiff lacked Article III standing and that we lacked subject matter jurisdiction; therefore we were bound to remand the case to state court. As we now find that was error, we begin our analysis by discussing the issue of prudential standing, and again find that we do not have prudential standing over Mr. Hvizdak's claims. We also find that prudential standing is non-jurisdictional, and as such we will waive enforcement of the doctrine and address Mr. Hvizdak's claims on the merits. Finally, we discuss how Mr. Hvizdak's claims should be dismissed on four separate grounds.

**a. Prudential Standing**

In Defendants' Motion to Reconsider [ECF No. 80], they argued that we conflated Article III standing with prudential standing and wrongfully arrived at the conclusion that we are deprived of subject matter jurisdiction and bound by 28 U.S.C. § 1447(c) to remand to State court. We agree.

Apart from the constitutional requirements for standing in Article III, federal courts have imposed a set of prudential limitations on the exercise of jurisdiction. See Bennett v. Spear, 520 U.S. 154, 162 (1997) ("The federal judiciary has also adhered to a set of prudential principles that bear on the question of standing.") (citations omitted). One of the most well-established tenets of prudential standing is that a "litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." Powers v. Ohio, 499 U.S. 400, 410 (1991). Specific to this case, the Third Circuit has consistently held that, as a matter of prudential standing, a shareholder does not have a direct cause of action when an injury is suffered by their corporation as a separate legal person. See Official Comm. of Unsecured

Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 348 (3d Cir. 2001). "Rather, it is the corporate body that suffers the primary wrong and, consequently, it is the corporate body that possesses the right to sue." Id. This view has been extended to the guarantors of a corporation's debt. See Temp-Way Corp. v. Continental Bank, 139 B.E. 299, 316-17 (E.D. Pa. 1992), *aff'd* 981 F.2d 1248 (3d Cir. 1992). Therefore, we hold that we do not have prudential standing over Mr. Hvizdak's claims, as they are wholly derivative of wrongs suffered by his businesses and trusts for which he was a shareholder and/or guarantor.

However, it is unclear whether lack of prudential standing is jurisdictional. If prudential standing is non-jurisdictional, then we may waive its consideration and adjudicate the case based on its merits. See UPS Worldwide Forwarding, Inc. v. USPS, 66 F.3d 621, 626 n.6 (3d Cir. 1995). However, if prudential standing is jurisdictional, then we may not waive its consideration[2] and resultantly must remand Mr. Hvizdak's state claims. Id. There is significant disagreement among circuit courts on whether consideration of and objections to prudential standing may be waived. Compare Thompson v. Cnty. of Franklin, 15 F.3d 245, 248 (2d Cir. 1994) (not waivable); Cmty. First Bank v. Nat'l Credit Union Admin., 41 F.3d 1050, 1053 (6th Cir. 1994) (not waivable); and Animal Legal Defense Fund, Inc. v. Espy, 29 F.3d 720, 723 n.2 (D.C. Cir. 1994) (not waivable) with Baena v. KPMG LLP, 453 F.3d 1, 5 (1st Cir. 2006) (waivable); Kennedy v. Allera, 612 F.3d 261, 270 n.3 (4th Cir. 2010) (waivable); Bd. of Miss. Levee Comm'rs v. EPA, 674 F.3d 409, 417-18 (5th Cir. 2012) (waivable); RK Co. v. See, 622 F.3d 846, 851-52 (7th Cir. 2010) (waivable); City of L.A. v. Cnty. of Kern, 581 F.3d 841, 845

---

[2] An exception exists even if prudential standing is jurisdictional. In appropriate cases, jurisdictional issues need not be decided where the case could be alternatively decided on the merits in favor of the same party. See Norton v. Mathews, 427 U.S. 524, 530-32 (1976). We cannot apply this exception to avoid the difficult question of jurisdiction in this case, because deciding the case on the merits would fare against Mr. Hvizdak, whereas he would be granted remand in the alternative.

7

(9th Cir. 2009) (waivable); The Wilderness Soc. v. Kane Cnty., Utah, 632 F.3d 1162, 1168 n.1 (10th Cir. 2011) (waivable); Am. Iron & Steel Inst. v. OSHA, 182 F.3d 1261, 1274 n.10 (11th Cir. 1999) (waivable); and Gilda Indus., Inc. v. United States, 446 F.3d 1271, 1280 (Fed. Cir. 2006) (waivable). Our own circuit has acknowledged this divide more than once, but has thus far declined to decide the issue[3]. See UPS Worldwide Forwarding, 66 F.3d at 626 n.6; Lewis v. Alexander, 685 F.3d 325, 340 n.14 (3d Cir. 2012).

The Supreme Court recently noted that declining to adjudicate claims on grounds that are prudential, rather than constitutional, "is in some tension with our recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." Lexmark Int'l v. Static Control Components, Inc., 134 S. Ct. 1377, 1386 (2014) (quoting Sprint Communications, Inc. v. Jacobs, 134 S. Ct. 584, 591 (2013)) (internal quotations and citation omitted). Our Circuit recognized Lexmark's "disapproval of doctrines that permit courts to decline to decide claims on 'prudential' rather than statutory or constitutional grounds…." One2One Communs., LLC v. Quad/Graphics, Inc., 2015 U.S. App. LEXIS 12544, *27-28 (3d Cir. 2015). Furthermore, as a federal court we "lack the authority to abstain from the exercise of jurisdiction that has been conferred" or to "define the scope of federal jurisdiction within the constitutionally permissible bounds." New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 358-59 (1989) (citing cases).

Therefore, we hold that the judicially created prudential standing condition that requires a party to assert its own rights, not the rights of others, is non-jurisdictional and can be waived. See Elkin v. Fauver, 969 F.2d 48, 52 n.1 (3d Cir. 1992) (citing Craig v. Boren, 429 U.S. 190,

---

[3] The Eighth is the only circuit other than the Third that has not decided whether or not prudential standing is jurisdictional. See Lucas v. Jerusalem Cafe, LLC, 721 F.3d 927, 938 (8th Cir. 2013).

192-94 (1976) for the proposition that "prudential standing [is] not jurisdictional"). We will waive the requirement in this case and address the merits of Mr. Hvizdak's claim, providing four alternative reasons for dismissal.

### b. Plaintiff's Claims Are Time Barred

First, Plaintiff's claims are time barred. As previously detailed, Plaintiff asserts LIBOR-related claims under RICO, common-law fraud, and civil conspiracy. Civil RICO has a four-year statute of limitations, see Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143, 156 (1987), while Pennsylvania common law fraud and civil conspiracy both have a two-year statute of limitations. See 42 Pa.C.S. § 5524 (2004). The injury discovery rule in Forbes v. Eagleson directs that the running of the four-year limitations period of a civil RICO claim is triggered when the plaintiffs knew or should have known of their injury and its source. 228 F.3d 471, 484-85 (3d Cir. 2000).

As described in In re LIBOR-Based Fin. Instruments Antitrust Litig., by May 29, 2008, seven articles had been published in prominent national news sources suggesting that LIBOR had been manipulated since August 2007. 935 F. Supp. 2d 666, 700 (S.D.N.Y. 2013). See also 7 W. 57th St. Realty Co., LLC v. CitiGroup, Inc., 2015 U.S. Dist. LEXIS 44031, *70-72 (S.D.N.Y. 2015). The premier article in the aforementioned group of seven – Carrick Mollenkamp & Mark Whitehouse, Study Casts Doubt on Key Rate – WSJ Analysis Suggests Banks May Have Reported Flawed Interest Data for Libor. Wall St. J., May 29, 2008, at AI – states:

> Major banks are contributing to the erratic behavior of a crucial global lending benchmark, a Wall Street Journal analysis shows.

9

> The Journal analysis indicates that Citigroup, Inc., WestLB, HBOS PLC, J.P. Morgan Chase & Co. and UBS AG are among the banks that have been reporting significantly lower borrowing costs for the London interbank offered rate, or Libor, than what another market measure suggests they should be. Those five banks are members of a 16-bank panel that reports rates used to calculate Libor in dollars.
>
> This has led Libor, which is supposed to reflect the average rate at which banks lend to each other, to act as if the banking system was doing better than it was at critical junctures in the financial crisis. The reliability of Libor is crucial to consumers and businesses around the world, because the benchmark is used by lenders to set interest rates on everything from home mortgages to corporate loans.

Given this article, Plaintiff should have known of his injury and its source at least by its publishing date, May 29, 2008.

Plaintiff alleges "[d]espite my due diligence and efforts, your Plaintiff could not have actually or reasonably known about the LIBOR corruption despite my well founded suspicions and accusations of other bank wrongdoing." [ECF No. 39 ¶ 26]. Further, Mr. Hvizdak argues that because he did not have actual notice of his injury, and because the BBA made reassurances that LIBOR was accurate until at least 2011, he did not have reason to know of the alleged manipulation. However, "due diligence and efforts" based on "well founded suspicions and accusations of other bank wrongdoing" would reasonably have unearthed any of the aforementioned articles and data pointing to LIBOR manipulation.

Therefore, Plaintiff should have known of his injury by May 29, 2008, and because of this, he could not have reasonably relied on the BBA's, and other interested parties', persistent reassurances that LIBOR was accurate. Both the final LIBOR fix and the quotes from each of the panel banks were published daily, allowing a person of ordinary intelligence to review the submitted quotes and articles analyzing the quotes explaining why they were likely artificial.

10

Given the fact that BBA and Defendants' had a strong incentive to maintain confidence in LIBOR's integrity, and the fact that public denials were proven false by data publicly available by various newspapers, a reasonable person would not have accepted BBA's reassurances on their face.

Therefore, the limitations period was triggered May 29, 2008. The limitations expired for Plaintiff's RICO claim on May 30, 2012, and for Plaintiff's state civil conspiracy and common-law fraud claims on May 30, 2010. Given that Plaintiff's complaint was not filed in the Court of Common Pleas until March 26, 2014, Plaintiff's complaint was filed untimely. Accordingly, all claims are time-barred.

**c. Plaintiff Is Estopped By His Failure To Raise These Claims In Bankruptcy Court**

Even if Mr. Hvizdak's claims were not barred by the statute of limitations, they would be barred by judicial estoppel, given that he was on inquiry notice of the facts he now alleges throughout the pendency of his bankruptcy, yet he failed to disclose the claims in his bankruptcy case. Judicial estoppel "protects[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001) (quotes and citations omitted). In determining when to apply judicial estoppel to bar a seemingly inconsistent litigation stance, we must consider (1) whether the party has taken two positions that are "irreconcilably inconsistent;" (2) whether the change of position was in "bad faith" or to play "fast and loose" with the court; and (3) whether estoppel is "tailored to address the harm identified" and "no lesser sanction would adequately remedy the damage done by the litigant's misconduct." Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC, 337 F.3d 314, 319 (3d Cir. 2003) (quoting Montrose Medical Group Participating Savings Plan v. Bulger, 243 F.3d 773, 779-80 (3d Cir. 2001)).

First, Plaintiff's current position is irreconcilably inconsistent with his position in bankruptcy proceedings. Plaintiff filed for bankruptcy in September 2010, entered into the forbearance agreement with Defendants in November 2010, and his bankruptcy claim was dismissed in late 2011. As stated earlier, Plaintiff was on inquiry notice of the alleged LIBOR manipulation no later than May 29, 2008. Therefore, at the time Mr. Hvizdak signed the forbearance agreement, he was on inquiry notice of his injury and had the opportunity to disclose the claim before the bankruptcy court. However, Plaintiff's position in bankruptcy court was that he had no other claims other than a lawsuit against Michael DeSimone and two claims against the Commonwealth of Pennsylvania. See In re Hvizdak, Dkt. No. 37 at 7; Dkt. No. 121 at 8, 10.

Second, the proceedings of Mr. Hvizdak's bankruptcy case give a strong inference of bad faith and playing fast and loose with the courts. The bankruptcy court's final order barred Plaintiff from filing for bankruptcy anywhere in the country for two years. Id., Dkt. No. 296 at 1. The United States Trustee suggested this sanction after she found that Mr. Hvizdak should be held accountable "for his bad faith conduct," and that "it is highly likely that this debtor [Mr. Hvizdak] will again utilize the bankruptcy court to gain a litigation advantage against his creditors." Id., Dkt. No. 287 at 8, 10. These attestations by the Trustee and Bankruptcy Judge to Mr. Hvizdak's bad faith cut against his assertion that "Your Plaintiff did not make improper usage of any judicial machinery," and his argument against estoppel on equitable grounds. [ECF No. 50 at 13].

Third, dismissal by estoppel is tailored to address the aforementioned conduct, and we find that no lesser sanction would provide adequate remedy. Applying a lesser sanction here would reward Mr. Hvizdak for behavior that has been found by the Trustee to be seeking to

specifically gain a litigation advantage.  Id.  If such behavior were rewarded, "the integrity of both the bankruptcy process and the judicial process would suffer," and would "send a message that a debtor should consider disclosing potential assets only if he is caught concealing them." Krystal, 337 F.3d at 325 (internal quotation and citation omitted).

In conclusion, even if Plaintiff's claims were not barred by the applicable statutes of limitations, they would be barred by judicial estoppel for failure to disclose the claims in bankruptcy court.

### d. Plaintiff's Claims Are Barred Under The Forbearance Agreement

Even if Plaintiff's claims were not time barred and barred by estoppel, they are entirely barred by the forbearance agreement.  In the agreement, Plaintiff represented that neither he nor his businesses have any claims against Defendants, and Plaintiff further

> unconditionally releases, acquits, waives and forever discharges and relieves the Bank and all of its subsidiaries and affiliates, and their respective directors, officers, employees, shareholders, attorneys, successors and assigns…from any and all Claims which the Obligor ever had, now has or which may result from the past or present state of things, against or related to the Bank Parties…

[First Amendment to the Forbearance Agreement, ECF No. 47-2 ¶¶ 4(a)-(b)].  This clear language moves against Plaintiff when he, asserting his claims are not barred, argues "[t]he intent of the parties must be gleaned from the language of release."  [ECF No. 50 at 4].

Plaintiff's other arguments against the forbearance agreement barring his claims include ignorance of the alleged LIBOR scheme at the time of signing, [ECF No. 50 at 5] and that he was "bullied" into signing the agreement [ECF No. 39 ¶ 142].  The former argument is refuted by our previous finding that Plaintiff was on inquiry notice of the alleged LIBOR scheme prior to his signing the agreement, as Plaintiff was on notice no later than May 29, 2008 and signed the agreement in November 2010.  The latter is refuted by the fact that Mr. Hvizdak is a

13

sophisticated businessman, owning multiple businesses, and by the benefit Mr. Hvizdak received from Defendants in the forbearance agreement. Defendants agreed to "forbear for a period of time from exercising its rights and remedies as a result of the Existing Defaults, whether available either at law, in equity or otherwise, to collect the indebtedness due them from [Mr. Hvizdak's businesses and trusts]" [ECF No. 47-1 ¶ F]. At the time the forbearance agreement was signed, Mr. Hvizdak was obligated to the bank in the amount of $2.3 million principal remaining from the $2.5 million loan.

We need not reach a determination of the exact scope of the forbearance agreement to conclude that the specific claims presently before the Court are barred. In conclusion, assuming *arguendo* that Plaintiff's claims were not time barred and barred by estoppel, they would be barred by the forbearance agreement.

**e. Plaintiff's Complaint Fails To State A Claim On Which Relief Can Be Granted**

Even if Plaintiff's claims were not time barred, barred by estoppel, and barred by the forbearance agreement, they would be dismissed for failure to state a claim on which relief can be granted. Mr. Hvizdak claims that he is entitled to relief under RICO, civil conspiracy, and common law fraud theories.

To state a civil RICO claim, Plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. See Sedima v. Imrex Co., 473 U.S. 479, 496 (1985). Plaintiff in addition must allege that "he has been injured in his business or property by the conduct constituting the violation." Id. As an initial matter, Plaintiff has failed to allege sufficiently under RICO that any LIBOR manipulation scheme caused him or his businesses to default on their loans. For example, Mr. Hvizdak has pleaded that Defendants "caused LIBOR rates to be set artificially low…." [ECF No. 39 ¶ 24]. However, as a borrower rather than a

14

lender, any suppression of LIBOR would have actually lowered the payments due on his LIBOR-linked interest rate contained within the loan and forbearance agreement, rather than raising the payments. Plaintiff does not allege once in his 43-page Amended Complaint [ECF No. 39] that his businesses defaulted on their loan because the interest owed was less than it should have been.

Rather, among allegations that Defendants "besmirched your Plaintiff's credit rating and business reputation by 'raiding' several of his corporate and trust accounts to satisfy arbitrary, oppressive and unfair charges fabricated by the Bank" [ECF No. 39 ¶ 34] and "harmed [Plaintiff] by loss of his credit reputation" [ECF No. 39 ¶ 46], is that Plaintiff would not have entered into the forbearance agreement had he known of the alleged LIBOR manipulation scheme [ECF No. 50 at 16]. This argument is rendered moot by the previous determination that Plaintiff was on inquiry notice of the alleged manipulation no later than May 29, 2008 – more than two full years prior to entering the forbearance agreement. Therefore, Plaintiff cannot tie any harm that was suffered by him or his businesses to the alleged manipulation.

Further, applying the Iqbal test and striking Plaintiff's Amended Complaint of all conclusory allegations, Plaintiff has failed to plead any specific conduct of the alleged racketeering, dates of alleged racketeering, the participants involved in the alleged racketeering, or a pattern of activity that warrants the label 'racketeering.' Bare assertions that "Defendants acting in agreement…have engineered a series of far reaching schemes both coercive and fraudulent to commit an astonishing array of white collar crimes under color of law" [ECF No. 39 ¶ 48] coupled with paragraphs of legal standards alone [See ECF No. 39 ¶¶ 112-126] does not give rise to a plausible claim for relief under RICO. Plaintiff's Amended Complaint likewise

15

does not give rise to a plausible claim for relief under civil conspiracy for failure to adequately plead that the Defendants actually conspired.

Further, Plaintiff's Amended Complaint does not state a claim for common-law fraud under Pennsylvania law. Plaintiff must "state with particularity the circumstances constituting fraud or mistake" Fed. R. Civ. Pro. 9(b) and allege

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

Bortz v. Noon, 556 Pa. 489, 729 A.2d 555, 560 (Pa. 1999).

Assuming without deciding that Plaintiff's Amended Complaint does plausibly satisfy the first four elements of common-law fraud when viewing the Complaint in the light most favorable to the Plaintiff, it fails to give rise to a plausible claim as to the latter two elements. Plaintiff could not have justifiably relied on the misrepresentation, assuming one existed, because he was on inquiry notice of the alleged misrepresentation prior to signing the forbearance agreement. Further, as previously stated, Plaintiff has not alleged that his injuries were proximately caused by the LIBOR manipulation, a scheme that would have lessened the interest his businesses owed.

In conclusion, assuming that Plaintiff's claims were not time barred, barred by estoppel, and barred by the forbearance agreement, Plaintiff's claims should be dismissed because he has failed to state a claim on which relief can be granted.

### f. Granting Leave To Amend Would Be Futile

As previously stated, among factors that may justify denying leave to amend is "futility of amendment." Foman, 371 U.S. at 182. Leave to amend may be denied as futile if the amendment could not withstand a motion to dismiss. Massarsky, 706 F.2d at 125. Noting that

Plaintiff has already submitted an amended complaint, further leave to amend will not be granted because no subsequent amendments could withstand the claims being time barred, barred by estoppel, barred by the forbearance agreement, or overcome the loose proximity between injury complained of and activity alleged without becoming a substantively new claim.

**V. Conclusion**

In conclusion, we hold that Plaintiff lacks prudential standing to bring the claims. Further, we hold that prudential standing is non-jurisdictional and waive prudential standing concerns so that we may address the merits of the claim. We hold the claims to be time barred as Mr. Hvizdak should have known of the alleged manipulation no later than May 29, 2008, barred by judicial estoppel for failure to raise the claims in bankruptcy proceedings, and barred by the forbearance agreement in which Mr. Hvizdak waived all claims against Defendants. Even if the claims were not barred, they would be dismissed for failure to state a claim upon which relief can be granted.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD C. HVIZDAK,<br>    Plaintiff,<br><br>v.<br><br>CITIZENS BANK OF PENNSYLVANIA,<br>RBS CITIZENS, NA, CITIZENS<br>FINANCIAL GROUP, NAS, ROYAL<br>BANK OF SCOTLAND, SENIOR V.P.<br>KAREN D. BUDNIAK,<br>    Defendants. | Civil Action No. 14-406<br><br>District Judge Maurice B. Cohill, Jr.<br>Magistrate Judge Robert C. Mitchell |

## ORDER

AND NOW this 6th day of August 2015, it is hereby ORDERED, ADJUDGED, and DECREED that Defendants' Motion for Reconsideration [ECF No. 80] is hereby GRANTED as follows:

1. The Court's Memorandum Order adopting the Report and Recommendation is hereby RECALLED and REPLACED with the Opinion accompanying this Order.

2. The Court's Order Remanding this case to the Court of Common Pleas of Allegheny County forthwith pursuant to 28 U.S.C. § 1447(c) is hereby RECALLED.

IT IS FURTHER ORDERED that Plaintiff's Amended Complaint [ECF No. 39] is dismissed with prejudice and the Clerk is to mark this CASE CLOSED.

                                                                 The Honorable Maurice B. Cohill, Jr.
                                                                  Senior United States District Judge

cc:    The Honorable Robert C. Mitchell
        United States District Court
        Western District of Pennsylvania

Richard C. Hvizdak, *pro se*
110 South Main St.
Pittsburgh, PA 15220

*Counsel for Defendant*
Robert J. Hannen, Esquire
Eckert Seamans Cherin & Mellott, LLC
US Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219-2788